## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **BRADLEY MAXWELL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **VINCENT FRAZER, JULIUS WILSON,** | : | |
| **KYM LYONS and SHELLY DEWESE** | : | **NO. 12-86** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                   June 14, 2021

      Bradley Maxwell, a Rastafarian inmate whose religious beliefs prohibit him from cutting his hair, brings this section 1983 action asserting claims arising out of his refusal to allow prison staff to cut his hair. He claims that when he was disciplined for refusing to shave his facial hair and cut his dreadlocks, his rights to due process under the Fourteenth Amendment, to the free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–1(a)(1)-(2), and to be free from cruel and unusual punishment under the Eighth Amendment were violated. He has sued Vincent Frazer, the Attorney General of the United States Virgin Islands; Julius Wilson, the Director of the Virgin Islands Bureau of Corrections; Kym Lyons, the Assistant Director of the Virgin Islands Bureau of Corrections; and Shelly Dewese, the Classifications Officer at the Golden Grove Adult Correctional Facility in the Virgin Islands Bureau of Corrections.

      When he was in custody in the Virgin Islands, he was permitted to grow his hair and remain in the general population. After he was transferred to a maximum security Virginia prison to serve his sentence, Maxwell was confined in segregation because he refused to comply with the prison's grooming standard requiring him to shave his face

and cut his dreadlocks. Maxwell alleges that at the time he was transferred, the Virgin Islands Bureau of Corrections knew that as a Rastafarian he would be subject to placement in segregation in the Virginia state prison in accordance with its grooming policy. He contends that it should have transferred him to another prison in the Virgin Islands or to one on the mainland that did not have such a restrictive grooming policy. He seeks a transfer to a prison in another jurisdiction where he can reside in the general population without being punished for his religious practice of letting his hair grow. He also seeks money damages.

Moving for summary judgment, Dewese, a Virgin Islands Bureau of Corrections classifications officer,[1] argues that Maxwell's transfer to the Virginia Department of Corrections ("VDOC") was proper under federal and local law. She further argues that regardless of the propriety of the transfer, the defendants are not liable because they did not participate in the decision to transfer him, his confinement to segregation did not amount to a constitutional violation, they are entitled to qualified immunity, and Maxwell's claims are barred by the statute of limitations.[2]

Even though all of the defendants answered the complaint, only Dewese moved for summary judgment.[3] Nevertheless, we may, *sua sponte*, grant summary judgment in favor of a non-moving defendant as long as the plaintiff is given both notice that summary

---

[1] *See* Shelly Dewese's Cross Motion for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s SJ Mot.") (Doc. No. 66); Aff. of Shelly Dewese ("Dewese Aff.") (Doc. No. 67-1) ¶¶ 1-2.

[2] *See* Shelly Dewese's Mem. in Support of Def.'s Cross Motion for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s SJ Br.") (Doc. No. 67) at ECF 6-8, 13, 18.

[3] Although Dewese does not explain why she is the only movant, it appears to be based on her contention that that none of the other defendants was properly served. *See* Dewese's Mot. for Enlargement of Time (Doc. No. 52) at ECF 1 n.1; Dewese's Resp. to Pl.'s Motion for Discovery (Doc. No. 74).

judgment is being contemplated and a reasonable opportunity to respond. *Forrest v. Parry*, 930 F.3d 93, 110–11 (3d Cir. 2019) (quoting Fed. R. Civ. P. 56(f)(1)); *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Dewese's arguments apply equally to all defendants, and Maxwell has responded to those arguments. Therefore, we shall also consider whether the non-moving defendants are entitled to summary judgment.

Because Maxwell first asserted his claim pertaining to his transfer from the Virgin Islands to the Virginia Department of Corrections more than eleven years after it accrued, it is time-barred. Maxwell's RLUIPA, Eighth Amendment and transfer claims are barred by *res judicata* because they are the same claims he made in other cases that have been decided. The defendants are also entitled to summary judgment on all of Maxwell's claims because they did not participate in the alleged wrongful conduct underlying those claims.

**Background**

In 1998, after pleading guilty to second degree murder and escape in the Territorial Court of the Virgin Islands, Maxwell was sentenced to serve an aggregate 35 years in prison. He began serving his sentence at Golden Grove Adult Correctional Facility ("Golden Grove") in the Virgin Islands. On July 10, 2001, pursuant to two contracts between the U.S. Virgin Islands and the Commonwealth of Virginia governing the confinement and supervision of Virgin Islands inmates by the VDOC,[4] he was transferred to Wallens Ridge State Prison in Virginia. In 2007, he was transferred to Red Onion State

---

[4] *See* Interstate Corrections Compact between the U.S. Virgin Islands and the Commonwealth of Virginia, Dewese Aff. Ex. E at ECF 33-38; Correctional Services Contract between the U.S. Virgin Islands, Dep't of Justice and the Commonwealth of Virginia, Dep't of Corrections, Dewese Aff. Ex. D at ECF 10-32.

3

Prison, another Virginia state prison, where he remained until 2011, when he was transferred back to Wallens Ridge. Between 2012 and 2016, Maxwell was transferred several times between the Red Onion and Wallens Ridge prisons.[5] As of June 2017, he was confined to Saguaro Correctional Center in Eloy, Arizona.[6]

Maxwell alleges that while at Golden Grove, he was permitted to grow his hair, participate in the observance of all Rastafarian holy days with other Rastafarian inmates, and remain in the general population. At Wallens Ridge and Red Onion, he was placed and remained in administrative segregation, depriving him access to many necessities and privileges available to prisoners in general population.

Maxwell claims that upon arrival at Wallens Ridge in 2001, he was informed about the Virginia Department of Corrections 1999 grooming policy under Operating Procedure ("OP") 864,[7] which required him to shave his face and cut his dreadlocks. Because he objected to orders and physical attempts to cut and shave his hair, Maxwell was found in violation of OP 864 for failure to comply with a direct order. In accordance with OP 864, Maxwell was placed in isolation for his first three offenses for five, ten and fifteen days, respectively.[8] When he received his fourth offense, he was placed in administrative segregation indefinitely. While in administrative segregation, he was deprived of access to all group religious services, consumable commissary items, hair care products,

---

[5] *See* Aff. of Jimmy Collins, Unit Manager at Wallens Ridge ("Collins Aff.") (Doc. No. 67-2) ¶ 9. From 2004 through 2015, Maxwell received 56 disciplinary infractions for offenses such as possession of a weapon, simple assault and threatening bodily harm, 48 of which he received while at Wallens Ridge. Collins Aff. Ex. A at ECF 7-8.

[6] *See* Maxwell's Notice of Address Change (Doc. No. 77).

[7] *See* Collins Aff. Ex. C at ECF 17-21.

[8] *See* Am. Compl. (Doc. No. 10) ¶¶ 18-22.

4

electronic items, personal clothing; was limited to three showers and five hours of recreation per week and two phone calls and twelve books per month; had limited access to vocational and educational programs; was confined in a single cell; and subject to full body searches every time he left his cell.[9]

Until 2013, an inmate held in administrative segregation for violation of OP 864 and its superceding OP 864.1[10] could end restrictive status only by complying with the OP.  For Maxwell that meant cutting his dreadlocks.  In 2013, Wallens Ridge established a Grooming Standards Violator Housing Unit ("VHU"), which was created to, among other things, provide an opportunity for violators of OP 864.1 to participate in programs and earn privileges that were not available in administrative segregation.[11]  In the Phase I level of the VHU, inmates were entitled to television privileges, phone calls, enroll in distance learning programs, possess certain individual faith objects, eat meals outside their cell, have an additional five hours recreation per week and purchase ten dollars' worth of consumable commissary items per week.  In the Phase II level, inmates were entitled to longer recreation time and gym access, a higher spending limit on commissary items, participate in some religious services and share a double cell.  Inmates were eligible to enter Phase I of the VHU unit if they had been in administrative segregation for one year and were free of certain disciplinary charges for a defined period of time.  They were allowed to move to Phase II, at the discretion of the prison administrators, after complying with all mandated programming and meeting all cell requirements for at least

---

[9] *See id.* ¶ 24; Aff. in Support of Pl.'s Resp. to Answer (Doc. No. 45-1) ¶¶ 7-8.

[10] OP 864 was superceded in 2010 by OP 864.1.  *See* Collins Aff. Ex. D at ECF 23.

[11] *See* OP 864.2 (Doc. No. 71-6 at ECF 11-15).

six months.[12]

Maxwell remained in administrative segregation at the VDOC except for a five-week period in early 2017, when he was placed in Phase I of the VHU.[13] He claims that the VHU did not offer all of the privileges listed in OP 864.1. For example, he claims that there was a years-long waiting list to enroll in educational programs, and television privileges were non-existent. He was returned to administrative segregation at Wallens Ridge on February 5, 2017.[14] It appears that he remained there in that status until June of 2017, when he was transferred to Saguaro Correctional Center in Eloy, Arizona.

Maxwell filed his initial complaint in August of 2012,[15] and amended it in November 2012.[16] In September of 2013, the defendants filed an answer. Three years later, the court set deadlines for fact discovery and filing dispositive motions.[17] Seeking clarification of the scheduling order, Maxwell asked whether he was required to respond to the defendants' answer and whether the defendants were required to file a summary

---

[12] *Id.* at ECF 11-13.

[13] At the time Maxwell was placed in the VHU, an amended version of OP 864.1 was in effect, which combined OP 864.2's Offender Grooming VHU rules with OP 864.1's Offender Grooming standards. *See* Collins Aff. ¶ 9; OP 864.1, amended July 29, 2016, eff. Aug. 1, 2016 (Collins Aff. Ex. B at ECF 9-15). Under the revised OP, eligibility requirements for entering Phase I of the VHU unit were relaxed. An inmate was no longer required to have been in administrative segregation for a full year for violating OP 864.1's grooming standards nor to have been free of certain types of disciplinary charges for a certain amount of time. Instead, he was required to have had no past history of disruptive or assaultive behavior. *See* OP 864.1 (Collins Aff. Ex. B at ECF 9, 13). Criteria for moving to Phase II remained the same. *Id.* at ECF 14.

[14] *See* Collins Aff. ¶ 10; Pl.'s Resp. to Defs.' Summ. J. Mot. ("Pl.'s Resp. to Def.'s SJ Mot.") (Doc. No. 71) at ECF 15; Pl.'s Aff. in Support of Pl.'s Resp. to Defs.' Summ. J. Mot. ("Pl.'s Aff.") (Doc. No. 71-1) at ECF 2-3.

[15] Compl. (Doc. No. 2).

[16] Am. Compl. (Doc. No. 10).

[17] *See* Doc. No. 41 (entered Sept. 2, 2016).

6

judgment motion.[18] Three weeks later, Maxwell filed his "Response to Answer."[19] In his response, he construed the defendants' answer as a motion for summary judgment, and argued there were genuine issues of material fact precluding the entry of judgment.[20] Maxwell also served the defendants with interrogatories, requests for admissions and a request for production of documents.[21] In January of 2017, Dewese responded to Maxwell's discovery requests and filed a motion for summary judgment.[22] On February 21, 2017, Maxwell filed his opposition to Dewese's motion. Dewese filed a reply on March 30, 2017.[23]

*Maxwell's Claims*

Maxwell claims the defendants violated his rights under the First, Eighth and Fourteenth Amendments and under the RLUIPA by transferring him from Golden Grove prison in the Virgin Islands to Wallens Ridge in Virginia without a hearing and knowing he would be confined to administrative segregation indefinitely because of its grooming policy. He contends they could have and should have transferred him to another prison in the Virgin Islands or in a state other than Virginia that did not have a restrictive grooming

---

[18] *See* Doc. No. 44 (filed Sept. 19, 2016).

[19] Resp. to Answer (Doc. No. 45) (filed Oct. 12, 2016).

[20] *Id.* at ECF 2, 6.

[21] *See* Doc. Nos. 46, 47, 48 (filed Oct. 12, 2016).

[22] *See* Def.'s SJ Mot.; Doc. Nos. 57, 60, 71-3, 71-4, 71-11. Mischaracterizing Maxwell's Response to Answer as a motion for summary judgment, Dewese calls her motion a "Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment." *Id.*; Def.'s SJ Br. at ECF 2. Because Maxwell stated in his Response to Answer that he viewed the defendants' answer as a motion for summary judgment and opposed the entry of judgment, we treat his filing as a reply to the defendants' answer to the complaint, not a motion, and treat Dewese's filing as a motion for summary judgment.

[23] *See* Doc. Nos. 71, 76. We were recently assigned this case.

policy and where he could let his hair grow while in the general population.[24]

Maxwell first asserts that the defendants violated his right to the free exercise of religion under the First Amendment and the RLUIPA. He argues that grooming standard OP 864.1 forced him to choose between violating his religious tenets by cutting his hair or being confined to administrative segregation. He maintains that because the segregation precluded him from participating in group prayer and observing regular Rastafarian holy days, the grooming standard imposes a substantial burden on the practice of his religion in violation of the RLUIPA. Additionally, he contends that sending him to a maximum security prison in Virginia was not the least restrictive means of furthering the defendants' interest in placing him in another facility. He claims the defendants could have placed him in a local prison or a prison in another state that did not have a restrictive grooming policy requiring his confinement to administrative segregation.[25]

In response, Dewese argues that Maxwell's right to the free exercise of his religion under the First Amendment and the RLUIPA was not violated because courts in Virginia and the Virgin Islands have held that OP 864.1 serves compelling government interests in maintaining order, security and discipline in prison and is the least restrictive means to further that interest.[26]

Maxwell next claims that the conditions of his confinement in administrative segregation violated his right under the Eighth Amendment to be free from cruel and

---

[24] Pl.'s Resp. to Def.'s SJ Mot. at ECF 5; Pl.'s Aff. at ECF 2-3.

[25] Pl.'s Resp. to Defs.' SJ Mot. at ECF 3-6; Pl.'s Aff. at ECF 2-3.

[26] *See* Def.'s SJ Br. at ECF 11-12.

8

unusual punishment. He contends that the conditions of his confinement constituted an Eighth Amendment violation. These restrictions included placement in administrative segregation; full body searches every time he left his cell; deprivation of access to group religious services, television, and consumable commissary items; and limitation to three showers and five hours of recreation per week, and two phone calls and twelve books per month.[27]

Dewese argues that Maxwell's Eighth Amendment claim fails because he has not alleged that prison conditions deprived him of life's minimum necessities such as food, clothing, shelter or medical care, or that prison officials acted with deliberate indifference in subjecting him to that deprivation.[28]

Finally, Maxwell claims the defendants violated his right to due process under the Fourteenth Amendment. He argues that he has been deprived of two state-created, constitutionally protected liberty interests. He claims that one derives from his right to a hearing prior to transfer from a Virgin Islands prison to one stateside under 5 V.I.C. § 4503 and 5 V.I.R. & Regs. § 4503-1. He claims that another arises from his placement in administrative segregation indefinitely, amounting to more than ten years. He contends this constituted an atypical and significant hardship and far exceeded what could be expected from prison life generally and what was expected with respect to the scope of the sentence for his conviction.[29] He claims that these liberty interests entitled him to

---

[27] Pl.'s Resp. to Defs.' SJ Mot. at ECF 14.

[28] *See* Def.'s SJ Br. at ECF 16.

[29] A state-created liberty interest can arise when a prison's action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

procedural due process protections he never received, including notice, an opportunity to be heard and periodic review of his placement in segregation.

Dewese argues that the defendants have not violated Maxwell's Fourteenth Amendment due process rights because the procedural right to a pre-transfer hearing provided in 5 V.I.C. § 4503 and its regulations does not create a substantive liberty interest, and an interstate transfer does not impose a sufficient atypical and significant hardship on an inmate to create a constitutionally protected liberty interest.[30]

Dewese also argues that Maxwell's section 1983 claim should be dismissed because the defendants did not participate in the decision to transfer Maxwell. She asserts that she was a classifications officer at the Virgin Islands Bureau of Corrections with no decision-making authority regarding his transfer. She attests that at the time of Maxwell's transfer, none of the other defendants worked at the Virgin Islands Department of Justice or Bureau of Corrections or made any decisions regarding his transfer.[31] Additionally, Dewese argues Maxwell's claims are barred by the statute of limitations, and the defendants are entitled to qualified immunity.[32]

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate

---

[30] See Def.'s SJ Br. at ECF 8-9, 14.

[31] See Dewese Aff. ¶¶ 1-2, 7-10.

[32] See Def.'s SJ Br. at ECF 6-7, 17-20.

burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

A nonmoving party may defeat summary judgment through the use of an affidavit or declaration. *See* Fed. R. Civ. P. 56(c)(1)(A) (a plaintiff may assert that a fact is genuinely disputed by "citing to particular parts of materials on the record, including depositions . . . affidavits or declarations"). However, "'conclusory, self-serving affidavits

11

are insufficient to withstand a motion for summary judgment.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)).  *See also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.").  Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact.  *Id.* (collecting cases).  Because they are not subject to cross-examination, affidavits are scrutinized carefully.  *In re CitX Corp.*, 448 F.3d 672, 680 (3d Cir. 2006) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2722, at 373, 379 (3d ed. 1998)).

## Analysis

### *Maxwell's Transfer Claim is Barred by the Statute of Limitations*

Maxwell brings this action pursuant to 42 U.S.C. § 1983, claiming that his transfer from the Virgin Islands prison to the Virginia Department of Corrections in July of 2001 was improper because the defendants failed to provide him with a pre-transfer hearing to which he was entitled under 5 V.I.C. § 4503 and 5 V.I.R. & Regs. § 4503-1.

The statute of limitations in a section 1983 action is governed by the limitations period applicable to personal injury actions of the state or territory where the cause of action arose.  *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  Maxwell's transfer claim arose in the Virgin Islands.  The Virgin Islands statute of limitations for a personal injury action is two years.  5 V.I.C. § 31(5)(A); *Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989).

The date of accrual in a section 1983 action is determined by federal law.  *Estate*

*of Lagano*, 769 F.3d at 860 (citing *Wallace*, 549 U.S. at 388). "Under federal law, a cause of action accrues . . . when the plaintiff knew or should have known of the injury upon which [his] action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citation omitted).

Maxwell's claim arising from his transfer accrued on July 10, 2001, the date he was transferred. The two-year statute of limitations expired on July 11, 2003. He filed this action on August 8, 2012, nine years after the limitations period had expired. Therefore, his transfer claim is time-barred.

Res Judicata

*Res judicata* bars Maxwell from re-litigating the same claims he asserted or could have asserted in cases he had filed in other district courts that have been decided. His claims for violations of the RLUIPA and the Eighth Amendment in those earlier cases were considered on the merits and either dismissed or judgment was entered.

*Res judicata*, or claim preclusion, bars the re-litigation of any claims between parties or their privies upon which a final, valid judgment on the merits has been entered. *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). It precludes any claim that "arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Davis*, 824 F.3d at 342 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)). The doctrine applies to claims actually litigated as well as to those which could have been but were not raised in the first action. *Blunt,* 767 F.3d at 276 (citation omitted).

*Res judicata* applies when a plaintiff has "asserted essentially the same claim against different defendants where there is a close or significant relationship between

13

successive defendants." *Lubrizol Corp.*, 929 F.2d at 966 (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)). "[A] lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Lubrizol Corp.*, 929 F.2d at 966 (citing *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950) ("[W]here . . . res judicata is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have . . . enlarged the area of res judicata beyond any definable categories of privity between the defendants.")).

<u>Maxwell's Transfer Claim is Barred by *Res Judicata*</u>

Maxwell contends that he was entitled to a pre-transfer hearing under 5 V.I.C. § 4503. He invoked the same statute in a *habeas corpus* action he filed in the Territorial Court of the Virgin Islands a few months after arriving at Wallens Ridge. In that action, he argued that the Virgin Islands government exceeded its authority under 5 V.I.C. § 4503 to transfer him because the Virginia prison did not offer educational or vocational resources required by section 4503(c).[33] *See Maxwell v. Stridiron*, Civ. A. No. 123/2001, 2003 WL 1936135 (Terr. V.I. March 25, 2003).[34] He did not assert that the government failed to provide him a pre-transfer hearing pursuant to section 4503 and 5 V.I.R. & Regs. § 4503-1. He could have, but did not, raise that claim in that case. Therefore, *res judicata*

---

[33] That section provides that "as a condition of and prior to the transfer of any inmates, the Director of Corrections shall ascertain and insure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s)." 5 V.I.C. § 4503(c).

[34] The territorial court denied Maxwell's claim. Because he was enrolled in a G.E.D. program at Wallens Ridge, and his only complaint about the program was that he met with his instructor only once a week for fifteen minutes, it held that the V.I. government acted within its authority under 5 V.I.C. § 4503 in transferring Maxwell, and the lack of instructor time did not amount to a Fourteenth Amendment due process violation. 2003 WL 1936135, at *2, *4.

bars Maxwell from re-litigating his transfer claim.

### Maxwell's RLUIPA Claim is Barred by Res Judicata

Maxwell claims that the defendants violated his right to the free exercise of religion under the First Amendment and the RLUIPA. To violate the RLUIPA, the correctional facility's policy or conduct must have imposed a substantial burden on a prisoner's practice of his religion, and was not the least restrictive means of furthering a compelling governmental interest. *Holt v. Hobbs*, 574 U.S. 352, 357-58, 360-62 (2015).

Maxwell has already asserted claims that his right to the free exercise of religion under the First Amendment and the RLUIPA was violated based on the same grooming standard in a case he filed against prison staff at Wallens Ridge and Red Onion in the Western District of Virginia. In *Maxwell v. Clarke*, Civil A. No. 12-00477, 2013 WL 2902833 (W.D. Va.) (filed Oct. 5, 2012), which he filed approximately two months after filing the instant action, he claimed that OP 864.1's requirement that he choose between cutting his hair or being confined to administrative segregation precluded him from practicing group prayer in violation of his right to the free exercise of religion under the First Amendment and the RLUIPA because it imposed a substantial burden on his practice of his religion. Although it found that the grooming standard substantially burdened Maxwell's practice of his religion, the district court held that it did not violate his right to the free exercise of his religion under the First Amendment and the RLUIPA. It concluded that OP 864.1 furthered the prison's compelling interest in maintaining order, security and discipline, and was the least restrictive means to further that interest.[35]

---

[35] Other courts in Virginia and the Virgin Islands have similarly held that OP 864.1 serves a compelling government interest and is the least restrictive means to further that interest. *See, e.g., Ragland*

15

*Maxwell v. Clarke*, 2013 WL 2902833, at *5-*8 (W.D. Va. June 13, 2013), *aff'd*, 540 F. App'x 196 (4th Cir. Sept. 27, 2013).

In this action, Maxwell asserts the same claim alleging a violation of his right to the free exercise of religion under the First Amendment and the RLUIPA based on the same underlying facts. The holding that grooming policy OP 864.1 was not unconstitutional in *Maxwell v. Clarke* (No. 12-00477) was a final judgment on the merits. Finally, even though the defendants were not parties to the first action, they have a "close and significant relationship" with the defendants in that action. The Virgin Islands and the Commonwealth of Virginia are parties to a contract governing the confinement and supervision of Maxwell and other Virgin Islands inmates by the VDOC. Additionally, Maxwell cannot prevail on his claims against the defendants in this action without a judgment against the Virginia Department of Corrections defendants for the same claims.

Thus, because this action involves the same parties or their privies, and Maxwell's RLUIPA claim is based on the same cause of action and facts as the earlier one, *res judicata* bars him from re-litigating the same claim in this case.

<u>Maxwell's Eighth Amendment Claim is Barred by *Res Judicata*</u>

Maxwell argues that the length and conditions of his confinement, which include placement in administrative segregation, deprivation of access to group religious services, television, consumable commissary items, and limitations on his use of showers, phone calls and books and recreation time, violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

---

*v. Angelone*, 420 F. Supp. 2d 507, 520 (W.D. Va. 2006); *Smith v. Turnbull,* Civ. No. 2005-187, 2011 WL 1434904, at *2 (D.V.I. April 14, 2011).

Maxwell raised the same Eighth Amendment claim based on the same conditions of his confinement in two prior cases. In his *habeas* action filed in the Territorial Court of the Virgin Islands[36] in 2001 a few months after arriving at Wallens Ridge, he claimed that confining him to segregation, subjecting him to full body searches and limiting him to three showers and five hours of recreation per week violated his Eighth Amendment right. *See Maxwell v. Stridiron*, Civ. A. No. 123/2001, 2003 WL 1936135, at *1 (Terr. V.I. March 25, 2003). In denying *habeas* relief, the court found that his conditions of confinement did not amount to an Eighth Amendment violation because he did not establish that he was deprived of life's minimum necessities such as food, clothing, shelter or medical care, or that prison officials acted with deliberate indifference in subjecting him to pain. 2003 WL 1936135, at *3-4.[37]

In a lawsuit filed nine years later in the Western District of Virginia, Maxwell asserted an Eighth Amendment claim. He based it on the same conditions of confinement he raised in his earlier Virgin Islands *habeas* case, but added denial of access to group religious services, television and consumable commissary items, and severe limits on the number of phone calls and books. *Maxwell v. Clarke*, Civil A. No. 12-00477, 2013 WL 2902833, at *1, *4 (W.D. Va. June 13, 2013). Granting summary judgment in favor of the defendants, the district court held that his conditions of confinement did not amount to an Eighth Amendment violation because he failed to allege, much less produce evidence, that he was deprived of life's minimum necessities such as food, clothing, shelter or

---

[36] In 2004, this court was renamed the Superior Court of the Virgin Islands.

[37] Although *habeas corpus* relief is typically "available only to address the fact or duration of an inmate's confinement, not the conditions of that confinement" brought as part of an Eighth Amendment claim of cruel and unusual punishment, "such claims are properly before a court on a petition for habeas corpus" in the territorial courts. 2003 WL 1936135, at *3 (citation omitted).

17

medical care, or that prison officials acted with deliberate indifference to his health and safety in unnecessarily inflicting pain. *Id.* at *5.

Here, Maxwell asserts the same Eighth Amendment claim based on the same conditions of confinement as he asserted in both his *habeas* action filed in the Virgin Islands Territorial Court in 2001 and in his section 1983 action filed in the Western District of Virginia in 2012, approximately two months after this action was filed. Because both courts have already decided his Eighth Amendment claim based on conditions during the same time period as in this case, Maxwell's Eighth Amendment claim in this case is barred by *res judicata*.

*The Defendants Are Entitled to Summary Judgment on All of Maxwell's Claims Because They Did Not Participate in the Alleged Federal and Constitutional Violations*

Even if *res judicata* did not bar Maxwell's transfer, RLUIPA and Eighth Amendment claims, these claims, as well as his Fourteenth Amendment Due Process claim, would fail because the defendants did not participate in the alleged wrongful conduct.

The defendants are entitled to judgment on Maxwell's transfer claim under section 1983 because none of the defendants participated in the decision to transfer him. Dewese submitted an unchallenged affidavit stating that she was the only named defendant working at the Virgin Islands Bureau of Corrections at the time of Maxwell's transfer. As a classifications officer, she had no decision-making authority regarding his transfer, did not participate in any decisions regarding the transfer of inmates, and does not know why Maxwell was transferred to Wallace Ridge in 2001. Additionally, none of the other defendants worked at the Bureau of Corrections at the time of Maxwell's transfer

or made any decisions regarding his transfer.[38]

To prevail on a section 1983 claim, a plaintiff must show that the defendant violated his constitutional rights. *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). A plaintiff must establish that the defendant was personally involved in the alleged wrong. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A plaintiff may do so through evidence demonstrating "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Id.* (citing *Rode*, 845 F.2d at 1207). Liability may not be predicated solely on the basis of vicarious liability. *Chavarriaga*, 806 F.3d at 222.

Maxwell does not rebut Dewese's affidavit attesting to the defendants' lack of involvement in the decision to transfer him to Wallens Ridge in Virginia. Although he submits an affidavit, it does not raise any genuine disputes of material fact. It restates the allegations in the amended complaint that Dewese, Wilson and Lyons "had a direct hand in [his] transfer."[39] This conclusory statement does not create an issue of fact. It does not rebut Dewese's sworn statement of facts. Consequently, even if his transfer claim was not barred by the statute of limitations or *res judicata*, the undisputed evidence shows that the defendants did not participate in the decision to transfer him.[40] Therefore, the defendants are entitled to summary judgment on the transfer claim.

Nor has Maxwell presented any evidence that the defendants were personally

---

[38] *See* Dewese Aff. ¶¶ 1-2, 7-10.

[39] *See* Pl.'s Aff. at ECF 4.

[40] Even if we allowed Maxwell to amend his complaint again to name the defendants in the Virgin Islands prison system who made the decision to transfer him to the Virginia Department of Corrections, any amendment would be futile because Maxwell's claim pertaining to his transfer is barred by the statute of limitations.

19

involved in the alleged conduct that he contends violated his right to the free exercise of religion under the RLUIPA,[41] his Eighth Amendment right to be free from cruel and unusual punishment and his right to due process under the Fourteenth Amendment. According to Maxwell, only individuals employed by the Virginia Department of Corrections participated in the development and enforcement of the OP 864.1 grooming standard in its prisons that allegedly prevented him from practicing his religion. Similarly, only VDOC personnel imposed the conditions of confinement at Wallens Ridge and Red Onion, including placing him in administrative confinement indefinitely, about which he complains. No Virgin Islands prison employees were involved or participated in any of the alleged constitutional violations.

## Conclusion

The undisputed facts establish that Maxwell's claims are barred by the statute of limitations, his claims are barred by *res judicata* and the defendants had no personal involvement in the actions giving rise to his claims. Therefore, we shall grant summary judgment in favor of the defendants and against the plaintiff.

---

[41] Because the RLUIPA protects inmates against actions taken by a governmental entity or person acting under color of state law, several district courts have extended section 1983's "personal involvement" requirement to RLUIPA claims. *See Jackmon v. New Jersey Dep't of Corr.*, No. CV 18-149 (KM) (SCM), 2020 WL 3496954, at *3 (D.N.J. June 29, 2020) (collecting cases in the Second and Third Circuits).